MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------X
CARLOS ZAMBRANO, EDUARDO MEJIA,
GLEN FORDE, RAMON REYES, and
REINALDO LASSALLE NUNEZ,
*individually and on behalf of others similarly*
*situated,*

|   |   |
|---|---|
| | **COMPLAINT** |
| *Plaintiffs*, | **COLLECTIVE ACTION UNDER** |
| | **29 U.S.C. § 216(b)** |
| -against- | **ECF Case** |

NEW HOLLAND RESIDENCES, LLC
(D/B/A NEW HOLLAND RESIDENCES),
NHR HUMAN RESOURCES, LLC (D/B/A
NEW HOLLAND RESIDENCES), JUAN
HERRERA, MONIQUE ADDERLY, MARLA
SIEGEL, DAVID SCHORR, and JOEL
DAVIS,

*Defendants.*
-----------------------------------------------------X

Plaintiffs Carlos Zambrano, Eduardo Mejia, Glen Forde, Ramon Reyes, and Reinaldo

Lassalle Nunez , individually and on behalf of others similarly situated (collectively, "Plaintiffs"),

by and through their attorneys, Michael Faillace & Associates, P.C., upon their knowledge and

belief, and as against New Holland Residences, LLC (d/b/a New Holland Residences), NHR

Human Resources, LLC (d/b/a New Holland Residences), ("Defendant Corporations"), Juan

Herrera, Monique Adderly, Marla Siegel, David Schorr, and Joel Davis, ("Individual

Defendants"), (collectively, "Defendants"), allege as follows:

## NATURE OF ACTION

1.      Plaintiffs are former employees of Defendants New Holland Residences, LLC (d/b/a New Holland Residences), NHR Human Resources, LLC (d/b/a New Holland Residences), Juan Herrera, Monique Adderly, Marla Siegel, David Schorr, and Joel Davis.

2.       Defendants own, operate, or control residential buildings in New York City, which are located at 105 West 113th Street, New York, New York 10026, 107 West 113th Street, New York, New York 10026, 109 West 113th Street, New York, New York 10026, 113 West 113th Street, New York, New York 10026, 115 West 113th Street, New York, New York 10026, 230 West 116th Street, New York, New York 10026, 243 West 116th Street, New York, New York 10026, 257 West 116th Street, New York, New York 10026, 350 West 115th Street, New York, New York 10026, 345 Manhattan Avenue, New York, New York 10026, 6 Morningside Avenue, New York, New York 10026, 302 West 112th Street, New York, New York 10026, 306 West 112th Street, New York, New York 10026, 310 West 112th Street, New York, New York 10026, and 638 West 160th Street, New York, New York 10032, and their central office located at 256 West 116th Street, 3rd Floor, New York, New York 10026 under the name "New Holland Residences."

3.      Upon information and belief, individual Defendants Juan Herrera, Monique Adderly, Marla Siegel, David Schorr, and Joel Davis, serve or served as owners, managers, principals, or agents of Defendant Corporations and, through these corporate entities, operate or operated the building as a joint or unified enterprise.

4.      Plaintiffs were employed as superintendents at the residential buildings listed above.

5.      At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage and overtime compensation for the hours that they worked.

6.    Rather, Defendants failed to maintain accurate recordkeeping of the hours worked and failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

7.    Furthermore, Defendants repeatedly failed to pay Plaintiffs wages on a timely basis.

8.    Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

9.    At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

10.    Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq.* and 650 *et seq.* (the "NYLL"), including applicable liquidated damages, interest, attorneys' fees and costs.

11.    Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

13.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate buildings located in this district. Further, Plaintiffs were employed by Defendants in this district.

## **PARTIES**

*Plaintiffs*

14.     Plaintiff Carlos Zambrano ("Plaintiff Zambrano" or "Mr. Zambrano") is an adult individual residing in New York County, New York.

15.     Plaintiff Zambrano was employed by Defendants at the residential buildings located at 230 West 116th Street, New York, New York 10026, 243 West 116th Street, New York, New York 10026, and 257 West 116th Street, New York, New York 10026 from approximately November 10, 2018 until on or about March 11, 2019.

16.     Plaintiff Eduardo Mejia ("Plaintiff Mejia" or "Mr. Mejia") is an adult individual residing in New York County, New York.

17.     Plaintiff Mejia was employed by Defendants at the residential buildings located at 350 West 115th Street, New York, New York 10026, 345 Manhattan Avenue, New York, New York 10026, and 6 Morningside Avenue, New York, New York 10026 from approximately November 10, 2018 until on or about March 11, 2019.

18.     Plaintiff Glen Forde ("Plaintiff Forde" or "Mr. Forde") is an adult individual residing in New York County, New York.

19.     Plaintiff Forde was employed by Defendants at the residential buildings located at 302 West 112th Street, New York, New York 10026, 306 West 112th Street, New York, New York

10026, and at 310 West 112th Street, New York, New York 10026 from approximately November 2018 until on or about March 11, 2019.

20.    Plaintiff Ramon Reyes ("Plaintiff Reyes" or "Mr. Reyes") is an adult individual residing in New York County, New York.

21.    Plaintiff Reyes was employed by Defendants at the residential building located at 638 West 160th Street, New York, New York 10032 from approximately November 10, 2018 until on or about March 11, 2019.

22.    Plaintiff Reinaldo Lassalle Nunez ("Plaintiff Lassalle" or "Mr. Lassalle") is an adult individual residing in Bronx County, New York.

23.    Plaintiff Lassalle was employed by Defendants at the residential buildings located at 105 West 113th Street, New York, New York 10026, 107 West 113th Street, New York, New York 10026, 109 West 113th Street, New York, New York 10026, 113 West 113th Street, New York, New York 10026 and 115 West 113th Street, New York, New York 10026 from approximately December 2018 until on or about March 11, 2019.

*Defendants*

24.    At all relevant times, Defendants owned, operated, or controlled residential buildings, located at 105 West 113th Street, New York, New York 10026, 107 West 113th Street, New York, New York 10026, 109 West 113th Street, New York, New York 10026, 113 West 113th Street, New York, New York 10026, 115 West 113th Street, New York, New York 10026, 230 West 116th Street, New York, New York 10026, 243 West 116th Street, New York, New York 10026, 257 West 116th Street, New York, New York 10026, 350 West 115th Street, New York, New York 10026, 345 Manhattan Avenue, New York, New York 10026, 6 Morningside Avenue, New York, New York 10026, 302 West 112th Street, New York, New York 10026, 306 West 112th Street, New York, New

York 10026, 310 West 112th Street, New York, New York 10026, and 638 West 160th Street, New York, New York 10032, and their central office located at 256 West 116th Street, 3rd Floor, New York, New York 10026 under the name "New Holland Residences."

25.     Upon information and belief, New Holland Residences, LLC (d/b/a New Holland Residences) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 256 West 116th Street, 3rd Floor, New York, New York 10026.

26.     Upon information and belief, NHR Human Resources, LLC (d/b/a New Holland Residences) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 256 West 116th Street, 3rd Floor, New York, New York 10026.

27.     Defendant Juan Herrera is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Juan Herrera is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Juan Herrera possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

28.     Defendant Monique Adderly is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Monique Adderly is sued individually in her capacity as owner, officer and/or agent of Defendant Corporations. Defendant Monique Adderly possesses operational control over Defendant Corporations, an ownership interest

in Defendant Corporations, and controls significant functions of Defendant Corporations. She determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

29.    Defendant Marla Siegel is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Marla Siegel is sued individually in her capacity as owner, officer and/or agent of Defendant Corporations. Defendant Marla Siegel possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. She determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

30.    Defendant David Schorr is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant David Schorr is sued individually in his capacity as a manager of Defendant Corporations. Defendant David Schorr possesses operational control over Defendant Corporations and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

31.    Defendant Joel Davis is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Joel Davis is sued individually in his capacity as a manager of Defendant Corporations. Defendant Joel Davis possesses operational control over Defendant Corporations and controls significant functions of Defendant Corporations.

He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

32.     Defendants operate buildings located in the West Harlem and Morningside Heights sections of Manhattan in New York City.

33.     Individual Defendants, Juan Herrera, Monique Adderly, Marla Siegel, David Schorr, and Joel Davis, possess operational control over Defendant Corporations, possess ownership interests in Defendant Corporations, or control significant functions of Defendant Corporations.

34.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

35.     Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

36.     Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

37.     In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

38.     Upon information and belief, Individual Defendants Juan Herrera, Monique Adderly, and Marla Siegel operate Defendant Corporations as either alter egos of themselves and/or fail to

operate Defendant Corporations as entities legally separate and apart from themselves, by among other things:

    a)  failing to adhere to the corporate formalities necessary to operate Defendant Corporations as Corporations,

    b)  defectively forming or maintaining the corporate entities of Defendant Corporations, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

    c)  transferring assets and debts freely as between all Defendants,

    d)  operating Defendant Corporations for their own benefit as the sole or majority shareholders,

    e)  operating Defendant Corporations for their own benefit and maintaining control over these corporations as closed Corporations,

    f)  intermingling assets and debts of their own with Defendant Corporations,

    g)  diminishing and/or transferring assets of Defendant Corporations to avoid full liability as necessary to protect their own interests, and

    h)  Other actions evincing a failure to adhere to the corporate form.

39.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

40.     In each year from 2018 to 2019, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

41.    In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the building on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

42.    Plaintiffs are former employees of Defendants who were employed as superintendents.

43.    Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Carlos Zambrano*

44.    Plaintiff Zambrano was employed by Defendants at the residential buildings located at 230 West 116th Street, New York, New York 10026, 243 West 116th Street, New York, New York 10026, and 257 West 116th Street, New York, New York 10026 from approximately November 10, 2018 until on or about March 11, 2019.

45.    Defendants employed Plaintiff Zambrano as a superintendent.

46.    Plaintiff Zambrano regularly handled goods in interstate commerce, such as materials and other supplies produced outside the State of New York.

47.    Plaintiff Zambrano's work duties required neither discretion nor independent judgment.

48.    Throughout his employment with Defendants, Plaintiff Zambrano regularly worked in excess of 40 hours per week.

49.    From approximately November 10, 2018 until on or about March 11, 2019, Plaintiff Zambrano worked from approximately 8:00 a.m. until on or about 4:00 p.m., Sundays, from approximately 7:00 a.m. until on or about 8:00 p.m. to 9:00 p.m., Mondays, and from approximately

7:00 a.m. until on or about 6:00 p.m. to 7:00 p.m., Tuesdays through Saturdays (typically 76 to 82 hours per week).

50.    Throughout his employment, Defendants paid Plaintiff Zambrano his wages by check.

51.    From approximately November 10, 2018 until on or about March 11, 2019, Defendants paid Plaintiff Zambrano a fixed salary of $600 per week.

52.    Although Plaintiff Zambrano was granted a one-hour meal period, Defendants constantly interrupted it requiring Plaintiff Zambrano to go back to work.

53.    Plaintiff Zambrano was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

54.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Zambrano regarding overtime and wages under the FLSA and NYLL.

55.    Defendants did not provide Plaintiff Zambrano an accurate statement of wages, as required by NYLL 195(3).

56.    In fact, Defendants adjusted Plaintiff Zambrano's paystubs so that they reflected inaccurate wages and hours worked.

57.    Defendants did not give any notice to Plaintiff Zambrano, in English and in Spanish (Plaintiff Zambrano's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

58.    Defendants required Plaintiff Zambrano to purchase "tools of the trade" with his own funds—including uniform with a pair boots and a drill.

*Plaintiff Eduardo Mejia*

59.    Plaintiff Mejia was employed by Defendants at the residential buildings located at 350 West 115th Street, New York, New York 10026, 345 Manhattan Avenue, New York, New York 10026, and 6 Morningside Avenue, New York, New York 10026 from approximately November 10, 2018 until on or about March 11, 2019.

60.    Defendants employed Plaintiff Mejia as a superintendent.

61.    Plaintiff Mejia regularly handled goods in interstate commerce, such as materials and other supplies produced outside the State of New York.

62.    Plaintiff Mejia's work duties required neither discretion nor independent judgment.

63.    Throughout his employment with Defendants, Plaintiff Mejia regularly worked in excess of 40 hours per week.

64.    From approximately November 10, 2018 until on or about March 11, 2019, Plaintiff Mejia worked from approximately 7:00 a.m. until on or about 5:00 p.m., three days a week, from approximately 7:00 a.m. until on or about 7:00 p.m., one day a week, from approximately 7:00 a.m. until on or about 4:00 p.m., one day a week, and from approximately 7:00 a.m. until on or about 10:00 a.m., Saturdays and Sundays (typically 57 hours per week).

65.    In addition, Plaintiff Mejia was not paid for his hours worked on Saturdays and Sundays.

66.    Throughout his employment, Defendants paid Plaintiff Mejia his wages by check.

67.    From approximately November 10, 2018 until on or about December 31, 2018, Defendants paid Plaintiff Mejia $13.00 per hour.

68.    In addition, for only approximately his first two weeks of employment, Plaintiff Mejia was paid the overtime rate of $19.50.

69.     From approximately January 2019 until on or about March 11, 2019, Defendants paid Plaintiff Mejia $15.00 per hour.

70.     Plaintiff Mejia's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

71.     For example, Defendants required Plaintiff Mejia to work an additional three hours past his scheduled departure time one day a week, and did not pay him for the additional time he worked.

72.     Defendants never granted Plaintiff Mejia any breaks or meal periods of any kind.

73.     Specifically, Defendants recorded that Plaintiff Mejia took a meal period, when in reality, he didn't.

74.     Plaintiff Mejia was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

75.     On a number of occasions, Defendants required Plaintiff Mejia to sign a document, the contents of which he was not allowed to review in detail.

76.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Mejia regarding overtime and wages under the FLSA and NYLL.

77.     Defendants did not provide Plaintiff Mejia an accurate statement of wages, as required by NYLL 195(3).

78.     In fact, Defendants adjusted Plaintiff Mejia's paystubs so that they reflected inaccurate wages and hours worked.

79.     Defendants did not give any notice to Plaintiff Mejia, in English and in Spanish (Plaintiff Mejia's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Glen Forde*

80.     Plaintiff Forde was employed by Defendants at the residential buildings located at 302 West 112th Street, New York, New York 10026, 306 West 112th Street, New York, New York 10026, and at 310 West 112th Street, New York, New York 10026 from approximately November 2018 until on or about March 11, 2019.

81.     Defendants employed Plaintiff Forde as a superintendent.

82.     Plaintiff Forde regularly handled goods in interstate commerce, such as materials and other supplies produced outside the State of New York.

83.     Plaintiff Forde's work duties required neither discretion nor independent judgment.

84.     Throughout his employment with Defendants, Plaintiff Forde regularly worked in excess of 40 hours per week.

85.     From approximately November 2018 until on or about December 31, 2018, Plaintiff Forde worked from approximately 8:00 a.m. until on or about 12:00 p.m. until on or about 1:00 p.m. until on or about 5:00 p.m. to 6:00 p.m., Mondays through Fridays (typically 40 to 45 hours per week).

86.     From approximately January 2019 until on or about February 2019, Plaintiff Forde worked from approximately 8:00 a.m. until on or about 12:00 p.m. until on or about 1:00 p.m. until on or about 3:00 p.m. to 4:00 p.m., Mondays, Tuesdays, and Wednesdays and from approximately 8:00 a.m. until on or about 11:00 p.m., Thursdays and Fridays (typically 48 to 51 hours per week).

87.     Throughout his employment, Defendants paid Plaintiff Forde his wages by check.

88.     From approximately November 2018 until on or about January 2019, Defendants paid Plaintiff Forde a fixed salary of $430 per week for the first 40 hours worked.

89.     From approximately February 2019 until on or about March 2019, Defendants paid Plaintiff Forde a fixed salary of $291 per week for the first 24 hours worked.

90.     For approximately 35 hours of work, Defendants did not pay Plaintiff Forde any wages for his work.

91.     Although Plaintiff Forde was granted a one-hour meal period, Defendants constantly interrupted it requiring Plaintiff Forde to go back to work.

92.     Plaintiff Forde was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

93.     On a number of occasions, Defendants required Plaintiff Forde to sign a document, the contents of which he was not allowed to review in detail.

94.     In addition, in order to get paid, Plaintiff Forde was required to sign a document in which Defendants misrepresented the hours that he worked per week.

95.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Forde regarding overtime and wages under the FLSA and NYLL.

96.     Defendants did not provide Plaintiff Forde an accurate statement of wages, as required by NYLL 195(3).

97.     In fact, Defendants adjusted Plaintiff Forde's paystubs so that they reflected inaccurate wages and hours worked.

98.     Defendants did not give Plaintiff Forde any notice  of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

99.     Defendants required Plaintiff Forde to purchase "tools of the trade" with his own funds—including ladders, drills, screwdrivers, and saws.

*Plaintiff Ramon Reyes*

100.    Plaintiff Reyes was employed by Defendants at the residential building located at 638 West 160th Street, New York, New York 10032 from approximately November 10, 2018 until on or about March 11, 2019.

101.    Defendants employed Plaintiff Reyes as a superintendent.

102.    Plaintiff Reyes regularly handled goods in interstate commerce, such as materials and other supplies produced outside the State of New York.

103.    Plaintiff Reyes's work duties required neither discretion nor independent judgment.

104.    Throughout his employment with Defendants, Plaintiff Reyes regularly worked in excess of 40 hours per week.

105.    From approximately November 10, 2018 until on or about March 11, 2019, Plaintiff Reyes worked from approximately 8:00 a.m. until on or about 7:00 p.m., Mondays through Fridays and from approximately 7:00 a.m. until on or about 10:00 a.m., Saturdays and Sundays (typically 61 hours per week).

106.    Throughout his employment, Defendants paid Plaintiff Reyes his wages by check.

107.    From approximately November 10, 2018 until on or about December 31, 2018, Defendants paid Plaintiff Reyes $13.00 per hour.

108.    From approximately January 1, 2019 until on or about March 11, 2019, Defendants paid Plaintiff Reyes $15.00 per hour.

109.    For approximately his last week of work, Defendants did not pay Plaintiff Reyes any wages for his work.

110. Although Plaintiff Reyes was granted a one-hour meal period, Defendants constantly interrupted it requiring him to go back to work.

111. Plaintiff Reyes's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

112. For example, Defendants required Plaintiff Reyes to work an additional three hours past his scheduled departure time five days a week, and did not pay him for the additional time he worked.

113. Plaintiff Reyes was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

114. On a number of occasions, Defendants required Plaintiff Reyes to sign a document, the contents of which he was not allowed to review in detail.

115. In addition, in order to get paid, Plaintiff Reyes was required to sign a document in which Defendants misrepresented the hours that he worked per week.

116. No notification, either in the form of posted notices or other means, was ever given to Plaintiff Reyes regarding overtime and wages under the FLSA and NYLL.

117. Defendants did not provide Plaintiff Reyes an accurate statement of wages, as required by NYLL 195(3).

118. In fact, Defendants adjusted Plaintiff Reyes's paystubs so that they reflected inaccurate wages and hours worked.

119. Defendants did not give any notice to Plaintiff Reyes, in English and in Spanish (Plaintiff Reyes's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Reinaldo Lassalle Nunez*

120.    Plaintiff Lassalle was employed by Defendants at the residential buildings located at 105 West 113th Street, New York, New York 10026, 107 West 113th Street, New York, New York 10026, 109 West 113th Street, New York, New York 10026, 113 West 113th Street, New York, New York 10026 and 115 West 113th Street, New York, New York 10026 from approximately December 2018 until on or about March 11, 2019.

121.    Defendants employed Plaintiff Lassalle as a superintendent.

122.    Plaintiff Lassalle regularly handled goods in interstate commerce, such as materials and other supplies produced outside the State of New York.

123.    Plaintiff Lassalle's work duties required neither discretion nor independent judgment.

124.    Throughout his employment with Defendants, Plaintiff Lassalle regularly worked in excess of 40 hours per week.

125.    From approximately December 2018 until on or about March 11, 2019, Plaintiff Lassalle worked from approximately 8:00 a.m. until on or about 6:00 p.m., Mondays through Fridays and from approximately 8:00 a.m. until on or about 10:30 a.m., Saturdays and Sundays (typically 55 hours per week).

126.    Throughout his employment, Defendants paid Plaintiff Lassalle his wages by check.

127.    For the month of December 2018, Defendants paid Plaintiff Lassalle $13.00 per hour for the first 30 hours worked.

128.    From approximately January 2019 until on or about March 11, 2019, Defendants paid Plaintiff Lassalle $15.00 per hour for the first 30 hours worked.

129.    For approximately a week, Defendants did not pay Plaintiff Lassalle any wages for his work.

130.    Plaintiff Lassalle's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

131.    For example, Defendants required Plaintiff Lassalle to work an additional four hours past his scheduled departure time five days a week, and did not pay him for the additional time he worked.

132.    Plaintiff Lassalle was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

133.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Lassalle regarding overtime and wages under the FLSA and NYLL.

134.    Defendants did not provide Plaintiff Lassalle an accurate statement of wages, as required by NYLL 195(3).

135.    In fact, Defendants adjusted Plaintiff Lassalle's paystubs so that they reflected inaccurate wages and hours worked.

136.    Defendants did not give any notice to Plaintiff Lassalle, in English and in Spanish (Plaintiff Lassalle's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Defendants' General Employment Practices*

137.    At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate minimum wage and overtime compensation as required by federal and state laws.

138.    Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

139.    Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, and resulted in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

140.    Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

141.    Defendants' time keeping system did not reflect the actual hours that Plaintiffs worked.

142.    Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

143.    On a number of occasions, Defendants required Plaintiffs to sign a document the contents of which they were not allowed to review in detail.

144.    Defendants required Plaintiffs to sign a document that reflected inaccurate or false hours worked.

145.    Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

146.    Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

147.    Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

148.    Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

149.    Defendants failed to provide Plaintiffs  and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

150.    Defendants failed to provide Plaintiffs  and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

151.    Plaintiffs bring their FLSA minimum wage, overtime compensation, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf

of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

152.    At all relevant times, Plaintiffs and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA, and willfully failing to keep records under the FLSA.

153.    The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION

### VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

154.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

155.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiffs (and the FLSA Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

156.    At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

157.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

158.    Defendants failed to pay Plaintiffs (and the FLSA Class members) at the applicable

minimum hourly rate, in violation of 29 U.S.C. § 206(a).

159.    Defendants' failure to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

160.    Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

161.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

162.    Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs (and the FLSA Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

163.    Defendants' failure to pay Plaintiffs (and the FLSA Class members), overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

164.    Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

165.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

166.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of their employment, and determined the rates and methods of any compensation in exchange for their employment.

167.     Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs less than the minimum wage.

168.     Defendants' failure to pay Plaintiffs the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

169.     Plaintiffs were damaged in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**

**VIOLATION OF THE OVERTIME PROVISIONS**

**OF THE NEW YORK STATE LABOR LAW**

170.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

171.     Defendants, in violation of N.Y. Lab. Law § 190 *et seq*., and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

172.     Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

173.     Plaintiffs were damaged in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**

**VIOLATION OF THE NOTICE AND RECORDKEEPING**

**REQUIREMENTS OF THE NEW YORK LABOR LAW**

174.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

175.     Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of

the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

176.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## SIXTH CAUSE OF ACTION

## VIOLATION OF THE WAGE STATEMENT PROVISIONS

## OF THE NEW YORK LABOR LAW

177.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

178.    With each payment of wages, Defendants failed to provide Plaintiffs with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

179.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION

## RECOVERY OF EQUIPMENT COSTS

180.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

181.    Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

182.    Plaintiffs were damaged in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION

## VIOLATION OF THE TIMELY PAYMENT PROVISIONS

## OF THE NEW YORK LABOR LAW

183.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

184.    Defendants did not pay Plaintiffs on a regular weekly basis, in violation of NYLL §191.

185.    Defendants are liable to each Plaintiff in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)    Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(c)     Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(d)     Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)     Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiffs and the FLSA Class members;

(f)     Awarding Plaintiffs and the FLSA Class members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)     Awarding Plaintiffs and the FLSA Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)     Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)     Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j)     Declaring that Defendants violated the timely payment provisions of the NYLL as to Plaintiffs;

(k)     Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(l)    Declaring that Defendants' violations of the provisions of the NYLL were willful as to Plaintiffs;

(m)    Awarding Plaintiffs damages for the amount of unpaid minimum wage and overtime compensation, and for any improper deductions or credits taken against wages as applicable

(n)    Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(o)    Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage and overtime compensation shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(p)    Awarding Plaintiffs and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(q)    Awarding Plaintiffs and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(r)    Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(s)    All such other and further relief as the Court deems just and proper.

## JURY DEMAND

 Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated: New York, New York

April 4, 2019

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:   _____ /s/ Michael Faillace _____
      Michael Faillace [MF-8436]
      60 East 42nd Street, Suite 4510
      New York, New York 10165
      Telephone: (212) 317-1200
      Facsimile: (212) 317-1620
      *Attorneys for Plaintiffs*

# MICHAEL FAILLACE & ASSOCIATES, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

April 2, 2019

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff. **(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Carlos Zambrano
Legal Representative / Abogado:   Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                      2 de abril de 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

March 14, 2019

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Eduardo Mejia

Legal Representative / Abogado:      Michael Faillace & Associates, P.C.

Signature / Firma:                   *Eduardo Mejia*

Date / Fecha:                        14 de Marzo, 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

March 14, 2019

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.

Name:                          Glen Forde

Legal Representative:          Michael Faillace & Associates, P.C.

Signature:                     *Glen Forde*

Date:                          March 14, 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

April 2, 2019

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                                    Ramon Reyes

Legal Representative / Abogado:        Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                                          02 de abril de 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

————

Faillace@employmentcompliance.com

March 18, 2019

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Reinaldo Nunez Lassalle

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                    18 de Marzo 2019

*Certified as a minority-owned business in the State of New York*